**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

LONNIE R.,[1]
    Plaintiff,

        v.                            Civil No. 3:21-cv-00254-MRC

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**MEMORANDUM OPINION**

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits under the Social Security Act (the "Act"). Plaintiff was fifty-three years old at the time of his benefits application and has past relevant work history as a railroad press operator. (R. at 64, 258, 289.) Plaintiff alleges he is unable to work due to stroke, high blood pressure, type two diabetes, seizures, vision and memory loss, depression, and anxiety. (R. at 66-67, 181.)

On December 11, 2019, an Administrative Law Judge ("ALJ") found Plaintiff not disabled under the Act and denied his applications for benefits. (R. at 32.) After exhausting his administrative remedies, Plaintiff seeks review of the ALJ's decision. This matter comes before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1), on cross-motions for

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

summary judgment, rendering the matter ripe for review.[2] (ECF Nos. 20, 23, 25, 26.) For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 23), GRANTS Defendant's Motion for Summary Judgment (ECF No. 25 ("Def.'s Mem.")), and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on August 31, 2018, alleging disability beginning July 9, 2018. (R. at 258.) The SSA denied these claims initially and upon reconsideration. (R. at 196, 214.) At Plaintiff's written request, the ALJ held a hearing on November 12, 2019, where Plaintiff appeared with counsel and testified along with a vocational expert. (R. at 53-84, 231.) On December 11, 2019, the ALJ issued a written opinion, denying Plaintiff's claim for benefits from July 9, 2018, through the date of the decision. (R. at 35-47.) On February 24, 2021, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-4.) Plaintiff then filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir.

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, date of birth (except for year of birth), and financial account numbers from this Memorandum Opinion, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the

claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. *Id.* § 416.920(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. *Id.* § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 37-47.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 9, 2018, the alleged onset date. (R. at 37.) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) obesity; (2) epilepsy; (3) loss of central visual acuity; (4) major depressive disorder; and (5) generalized anxiety disorder. (R. at 37.) The ALJ decided at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations. (R. at 38.) Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity,³ finding that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> [Plaintiff] can lift/carry/push/pull no more than 25 pounds both frequently and occasionally. He can climb ramps and stairs

---

³ Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule),

4

>occasionally; never climb ladders, ropes, or scaffolds; and balance occasionally. He has limited near acuity, far acuity, depth perception, accommodation and color vision in the right eye, but he retains the ability to work with large items and avoid hazards in the workplace. He can never work at unprotected heights and never around moving mechanical parts. He should never be required to operate a motor vehicle. He is able to understand and remember simple, routine work related instructions, and maintain concentration in two-hour increments to carry out simple, routine work related tasks before requiring a break. He is able to interact with supervisors, coworkers, and the public occasionally.

(R. at 40.) The ALJ made her finding after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. at 40.)

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. at 46.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 46.) In making her findings, the ALJ considered the testimony of a vocational expert, who opined that given Plaintiff's age, education, work experience, and residual functional capacity, he would be able to perform the light exertional level requirements of cleaner. (R. at 47.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 47.)

## IV. ANALYSIS

Plaintiff contends that four issues warrant a directed award of benefits or, in the alternative, remand. (Pl.'s Mem. Supp. Summ. J. at 23, 25, 28, 29 (ECF No. 24) ("Pl.'s Mem.").) First, Plaintiff argues the Commissioner did not meet her "burden of establishing that there were significant jobs in the national and local economy that Plaintiff can perform." (Pl.'s Mem. at 23.) Second, he

---

and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

contends the ALJ erroneously failed to assign controlling weight to the opinions of Plaintiff's treating medical providers. (Pl.'s Mem. at 25.) Third, he argues the ALJ committed legal error in finding that Plaintiff's type two diabetes was not a severe impairment. (Pl.'s Mem. at 28.) Fourth, he contends the ALJ's residual functional capacity findings failed to include the physical limitations imposed by Ellen Fleenor, M.D. ("Dr. Fleenor") and Timothy Wilson, M.D. ("Dr. Wilson") and the mental health limitations imposed by nurse practitioner Jemina Liverman ("Nurse Liverman") and licensed clinical social worker Morgan Honickel ("Ms. Honickel"). (Pl.'s Mem. at 30.)

For the reasons that follow, this Court finds that the ALJ did not err and substantial evidence supports the ALJ's findings.

**A. The ALJ Did Not Err at Step Five of the Sequential Evaluation.**

Plaintiff first argues that the ALJ failed to show that Plaintiff could perform work that exists in the national economy. (Pl.'s Mem. at 24-25.) Plaintiff contends that the residual functional capacity with additional lift, carry, and pull restrictions eliminated the medium exertional level positions, and that the ALJ subsequently failed to identify the number of available cleaner positions at the light level. (Pl.'s Mem. at 24-25.) According to Plaintiff, the number of cleaner positions at the light level is necessarily fewer than those available at the medium level, but that at any rate, the ALJ failed to specify how many light level positions were available in the national economy. (Pl.'s Mem. at 25.) Defendant responds that Plaintiff "has misunderstood the vocational expert's testimony[,]" which identified 130,000 light level cleaner positions in the national economy. (Def.'s Mem. at 28.)

*1. Legal Standard.*

At step five of the sequential analysis, the burden shifts to the Commissioner to demonstrate that a claimant can perform work that exists in the national economy considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). The burden at step five is satisfied so long as at least one occupation is identified which exists in significant numbers in the national economy that the claimant can perform. *See Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 859 (N.D.W. Va. 2009).

Work "exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country." 20 C.F.R. § 404.1566(a). Further, work exists in the national economy "when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant] is able to meet with [the claimant's] physical or mental abilities and vocational qualifications." *Id.* § 404.1566(b). However, work that involves only "[i]solated jobs" existing "in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] [is] not considered 'work which exists in the national economy.'" *Id.* § 404.1566(c).

The SSA has not adopted a bright line rule for a certain number of jobs to qualify as "significant" to meet the burden at step five. *Mayo v. Astrue*, No. 3:10cv866, 2012 U.S. Dist. LEXIS 33680, 2012 WL 859344, at *12 (E.D. Va. Feb. 24, 2012), *report and recommendation adopted*, No. 3:10cv866, 2012 U.S. Dist. LEXIS 33628, 2012 WL 859557 (E.D. Va. Mar. 13, 2012). The Fourth Circuit has at least suggested that as few as 110 jobs in a local economy is a significant number. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (stating that "approximately 110 jobs testified to by the vocational expert [does not] constitute an insignificant number."); *see also Critchley v. Colvin*, No. 5:15-cv-08288, 2016 U.S. Dist. LEXIS 69773, 2016

WL 3030211, at *8 (S.D.W. Va. May 4, 2016) (finding that "100 jobs in the regional economy, even in a single occupation, constitutes a significant number of jobs"), *report and recommendation adopted*, No. 5:15-cv-08288, 2016 U.S. Dist. LEXIS 68984, 2016 WL 3033763 (S.D.W. Va. May 26, 2016). The burden at step five can be satisfied by identifying jobs that exist either nationally or in the local economy, so long as there is nothing to suggest the job would exist only in isolated locations. *McCall v. Saul*, 844 F. App'x 680, 681 (4th Cir. 2021) ("We hold that evidence of jobs existing nationally constitutes evidence of work existing in several regions of the country, at least where there is nothing in the number of jobs or the nature of the jobs identified to indicate that those jobs would exist only in limited numbers in isolated regions of the country.").

    2. *Analysis.*

During the administrative hearing, the ALJ asked an impartial vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. (R. at 80.) The vocational expert: (1) identified two occupations at the medium exertional level: laundry worker (DOT[4] code 361.684-010) and cleaner (DOT code 358.687-010); and (2) advised that there are "over 30,000" medium level laundry worker positions and "over 25,000" medium level cleaner positions in the national economy. (R. at 81.) The vocational expert also identified cleaner (DOT code 323.687-014) as an occupation at the light exertional level with 130,000 positions in the national economy. (R. at 81.)

---

[4] The Dictionary of Occupational Titles ("DOT") is a publication of the United States Department of Labor that "list occupations existing in the economy and explain some of the physical and mental requirements of those occupations." *Pearson v. Colvin,* 810 F.3d 204, 205 n.1 (4th Cir. 2015). *See* U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991); U.S. Dep't of Labor, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES (1993); *see also* Dictionary of Occupational Titles, *available at* https://occupationalinfo.org/index.html (last visited March 7, 2023);

When presented with the same hypothetical, but a residual functional capacity that included a restriction to lifting, carrying, pushing, and pulling "no more than 25 pounds" frequently and occasionally,[5] the vocational expert testified that this added restriction would "eliminate those two medium jobs" but that "[t]he cleaner at the light exertional level would still be a possibility." (R. at 81.)

First, in his supporting memorandum, Plaintiff contends the ALJ failed to identify how many light exertional level cleaner jobs existed in the national economy. (Pl.'s Mem. at 28.) However, the plain language of the ALJ's decision belies Plaintiff's challenge. The ALJ explicitly identified 100,000 jobs in the national economy for the light-level cleaner position (DOT code 323.687-014). (R. at 47.) Second, Plaintiff argues that "the record does not show that the [vocational expert] testified that Plaintiff could perform the job of cleaner." (Pl.'s Mem. at 24.) Plaintiff contends that the vocational expert's testimony that "[t]he cleaner at the light exertional level would still *be a possibility*" does not definitively state whether "such a hypothetical person could perform the job . . . ." (Pl.'s Mem. at 24.) The Court finds Plaintiff's argument unavailing. The plain meaning of the vocational expert's testimony, particularly within the context in which it was told, clearly shows that a hypothetical individual with the stated restrictions could perform the requirements of cleaner at the light exertional level. Accordingly, the Court finds that substantial evidence supports the ALJ's step five determination that Plaintiff can perform other work that exists in significant numbers in the national economy.

---

[5] Notably, Plaintiff does not contend that the ALJ should have assigned greater restrictions or that the ALJ erred in her evaluation of the evidence as to Plaintiff's functional limitations. (*See* Pl.'s Mem. at 23-25.)

**B. The ALJ Appropriately Evaluated the Medical Opinion Evidence Pursuant to the Governing Regulations.**

Plaintiff next contends the ALJ committed legal error in relying on the opinions of non-examining agency consultants while ignoring or dismissing opinion evidence from Plaintiff's treating medical providers. (Pl.'s Mem. at 25-27.) Defendant argues that Plaintiff erroneously relies on previous SSA regulations governing medical opinion evidence, and that the ALJ correctly complied with the applicable regulations when evaluating the opinion evidence in this case. (Def.'s Mem. at 16-21.)

*1. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017.*

For claims filed on or after March 27, 2017, revised regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The revised regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a), (b).

Under the regulations,[6] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion [,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. § 404.1520c. Supportability and

---

[6] Because Plaintiff filed his disability claim after March 27, 2017, Section 404.1520c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* § 404.1520c(b)(2). Supportability and consistency are explained in the regulations as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how the other factors were considered. *Id.* § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. *Id.* § 404.1520c(b)(3).

2. *Analysis.*

As an initial matter, the undersigned notes that Plaintiff does not definitively present any argument as to what factors under 20 C.F.R. § 404.1520c the ALJ improperly considered or failed to address. Instead, Plaintiff suggests that the medical opinions of his treating providers are entitled to more controlling weight than other opinions by invoking the language of the old regulations that are not applicable here. (*See* Pl.'s Mem. at 25-26.) Plaintiff also cites to case law that analyzed ALJ decisions under the former standards. (*See* Pl.'s Mem. at 25-26.) Indeed, Plaintiff cites to 20 C.F.R. § 404.1527(d)(2), which previously set forth criteria for the treating physician rule before

11

it was recodified to 20 C.F.R. § 404.1527(c)(2). *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (effective Aug. 24, 2012 to Mar. 26, 2017). Further, as described above, the SSA published a new rule that eliminated the requirement that treating sources be given controlling weight and codified such change in 20 C.F.R. § 404.1520c. In doing so, the SSA did not preclude the introduction of treating source evidence altogether, but rather simply provided that such evidence is not necessarily to be given more weight than other evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 81 Fed. Reg. 62560, 62561 (Sept. 9, 2016).

Plaintiff compounds this error by citing to *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006) to support his contention that the ALJ erred in her medical opinion analysis. (Pl.'s Mem. at 26.) However, *Hines* was not a ruling on the assessment of a medical opinion of a treating physician, but merely a reiteration of the Fourth Circuit's application of 20 C.F.R. § 1527. *See* 453 F.3d at 564. Indeed, the Fourth Circuit reversed the Commissioner's decision in *Hines* because the Commissioner improperly applied the holding of *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989) by requiring objective evidence to prove that the claimant's pain was "so intense as to prevent him from working an eight hour day." *Hines*, 453 F.3d at 563-64. That is not at issue here.

Consequently, Plaintiff's failure to develop any argument as to the ALJ's evaluation of the medical opinion evidence in accordance with the governing regulations and case law is fatal to his appeal for remand on this issue. *See Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (noting, to warrant remand, a claimant must either show the ALJ has incorrectly applied a legal standard or show the ALJ's factual findings are not supported by substantial evidence). Accordingly, the undersigned finds no error warranting remand.

### C. The ALJ Did Not Err in Finding Plaintiff's Type Two Diabetes to be a Non-Severe Impairment.

Plaintiff contends the ALJ committed reversible error by "failing to recognize his diabetes mellitus as a severe impairment." (Pl.'s Mem. at 29.) In support, Plaintiff points to various treatment notes recording high blood glucose levels, high blood pressure, a "history of uncontrolled [diabetes mellitus]," memory loss, and hypoglycemia. (Pl.'s Mem. at 28-29, citing R. at 365-66, 372, 377, 407.) He also contends that the ALJ should have found his diabetes to be a severe impairment because it "caused macular edema and the loss of vision in his right eye[,]" and impacted his concentration, sensation in the lower extremities, and "abilities to do basic work activities." (Pl.'s Mem. at 29.) Defendant responds that: (1) "[t]he ALJ's finding that Plaintiff's diabetes was a non-severe impairment at step two was supported by substantial evidence and consistent with [the] regulatory framework"; and (2) Plaintiff "failed to demonstrate any such limitations arising from his diabetes, and the mere diagnosis of this impairment is not enough to prove disability." (Def.'s Mem. at 14.) Defendant contends that the ALJ nonetheless accounted for the limitations identified by Plaintiff in the residual functional capacity. (Def.'s Mem. at 14-16.)

*1. Legal Standard.*

At step two, an ALJ must consider a claimant's medically determinable impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. "The Supreme Court has held that this step of the disability evaluation is a *de minimis* threshold." *Williams v. Astrue*, 2010 WL 395631, at *14 (E.D. Va. Feb. 2, 2010), *report and recommendation adopted*, at *1 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)). An ALJ satisfies step two by finding a severe impairment and proceeding through the rest of the sequential analysis. *See McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 858 (11th Cir. 2015); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from

a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.") A claimant has the burden of demonstrating that he has an "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *Bowen*, 482 U.S. at 146. The claimant's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

A severe impairment causes more than a minimal effect on one's ability to work. *Id.* § 404.1520(c). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). In other words, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). An ALJ will find a claimant not disabled at step two if he "do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . , or a combination of impairments that is severe and meets the duration requirement." *Id.* § 404.1520(a)(4)(ii).

Further, under 20 C.F.R. § 404.1523, the ALJ must consider the combined effect of all of a claimant's impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Id.* § 404.1523. "Thus, the issue of whether or not a particular impairment is found severe is only critical if the ALJ finds no severe impairment and ends the analysis at step two; if any impairment is severe, the ALJ must consider all impairments when assessing residual functional capacity." *Miller v. Astrue*, No. 8:10-1142-HMH-JDA, 2011

14

U.S. Dist. LEXIS 45262, 2011 WL 1576203, at *15 (D.S.C. Apr. 7, 2011). Consequently, any error by an ALJ at step two is harmless if the ALJ considers the effects of all of the claimant's impairments in the subsequent steps. *See Brooks v. Astrue*, No. 5:10CV00104, 2012 U.S. Dist. LEXIS 41295, 2012 WL 1022309, at *12 (W.D. Va. Mar. 26, 2012) (citing *Miller*, 2011 U.S. Dist. LEXIS 45262, 2011 WL 1576203, at *15); *see also Gaskins v. Comm'r*, No. WDQ-13-1470, 2014 U.S. Dist. LEXIS 31710, 2014 WL 979205, at *5 (D. Md. March 12, 2014); *Hammond v. Astrue*, No. TMD 11-2922, 2013 U.S. Dist. LEXIS 29730, 2013 WL 822749, at *2 (D. Md. March 5, 2013) (collecting cases).

   2. *Plaintiff's Diabetes Treatment History.*

Shortly prior to the relevant period, Plaintiff treated for "uncontrolled [diabetes mellitus]" and restarted insulin therapy. (R. at 372, 715.) His wife reported that Plaintiff exhibited memory loss, which his provider attributed to hypoglycemia or depression. (R. at 715-16.) During the relevant period, Plaintiff presented to the Retina Institute of Virginia for a diabetic evaluation on July 10, 2018, where he reported a gradual onset of blurry vision in his right eye that had been worsening over the past year. (R. at 563.) Plaintiff's medical history indicated that he became "insulin dependent over 15 years ago," was prescribed insulin and lisinopril, and his last blood sugar test was 174. (R. at 563.) Systems review findings were unremarkable, except for the noted significant decrease in vision in his right eye. (R. at 564.) Plaintiff's doctor wrote that "there [was] no evidence of any diabetic retinopathy in either eye" but observed "evidence of arteriovenous nicking which is indicative of hypertensive retinopathy." (R. at 567.)

Plaintiff then presented as a new patient at Central Virginia Health Services on July 12, 2018, where Dr. Fleenor noted noncompliance with medication and Plaintiff was reporting problems with his vision. (R. at 475.) Although his "sugars [were] improved[,]" his blood pressure

was high, and he told his provider that he was "no longer able to work around heated metal and also [could] no longer see computer screen as needed to do his job." (R. at 475.)  On physical examination, Plaintiff was found to be in no acute distress, well-developed, well-nourished, and with full range of motion. (R. at 475-76.) On July 18, 2018, Plaintiff returned to his ophthalmologist and received an injection in the right eye. (R. at 570.) At a follow-up appointment August 23, 2018, Plaintiff's primary care provider noted that his "[s]ugars are great, low 100's" and his blood pressure was stable. (R. at 472.) Plaintiff's general examination findings remained normal, and he received counseling regarding nutrition, exercise, and diet. (R. at 472-73.)

Plaintiff followed up with his ophthalmologist in August and September 2018 and reported stable vision in both eyes, with "[n]o significant change of macular edema" after injections in July and August. (R. at 573, 575, 577, 580.) His condition was notably improved in November 2018, with "[l]ess macular edema status post Eylea therapy" in October 2018. (R. at 655.) He received another injection in his right eye and was advised to follow up in four to five weeks. (R. at 655.) In late November 2018, Plaintiff presented to his primary care physician for a three-month follow-up, reported zero out of ten pain, but endorsed having memory problems, feeling "weak and down, depressed, [and] tired all the time[.]" (R. at 694.) Plaintiff was found to be depressed on exam, with no other abnormalities, and was advised to follow up in three months. (R. at 694-95.)

Plaintiff returned to his ophthalmologist in January 2019, who noted that his ongoing problem with stable vision in his right eye was mild, with no new floaters, flashes of light, or ocular pain reported in either eye. (R. at 776.) His doctor remarked that his right eye was "improving," and the hypertensive retinopathy and nuclear cataracts in both eyes were stable with no progression. (R. at 782.) Notably, Plaintiff's doctor found "no [background diabetic retinopathy]" in both eyes and proceeded with another injection in the right eye. (R. at 782, 784.)

In March 2019, Plaintiff's ophthalmologist again determined mild severity in stable vision difficulties and indicated his blood sugar level was 160. (R. at 789.) Although his right eye macular edema was worse, he continued to show no background diabetic retinopathy, and his hypertensive retinopathy was stable with no progression. (R. at 792.) By June 2019, Plaintiff's right eye condition improved after undergoing an injection in March, and he was again found to have stable hypertensive retinopathy, lattice degeneration, nuclear cataracts, and no background diabetic retinopathy. (R. at 802.)

  3. *Substantial evidence supports the ALJ's finding that Plaintiff's diabetes was not severe.*

The ALJ acknowledged Plaintiff's diabetes diagnosis and history, but explained that she found it to be a non-severe medical impairment because there was "no evidence that [it] cause[s] more than minimal vocationally relevant limitations . . . ." (R. at 38.) Nonetheless, the ALJ explicitly affirmed that she "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff]'s residual functional capacity." (R. at 38.) Accordingly, the ALJ accounted for Plaintiff's "limited near acuity, far acuity, depth perception, accommodation and color vision in the right eye," and restricted him from working "at unprotected heights and never around moving mechanical parts" or from being required "to operate a motor vehicle." (R. at 40.) The ALJ accounted for Plaintiff's concentration difficulties by restricting him to understanding and remembering simple, routine work-related instructions, "maintain[ing] concentration in two hour increments to carry out simple, routine work related tasks before requiring a break." (R. at 40.) The ALJ also assigned exertional limitations. (R. at 40.)

Plaintiff contends that the record clearly demonstrates the severity of his diabetes, and points to a handful of medical treatment records in support of his argument that the ALJ committed reversible error. (Pl.'s Mem. at 29.) To the extent that Plaintiff claims his diabetes caused his right

17

eye vision impairment, this appears to be an invitation for this Court to re-weigh evidence that has already been considered and weighed by the ALJ. (Pl.'s Mem. at 29.) It is well established that this Court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d, 585, 589 (4th Cir. 1996.) Moreover, Plaintiff fails to explain how such a finding would have made a material difference at step five of the sequential evaluation, particularly given that the ALJ accounted for Plaintiff's vision, concentration, and exertional limitations in the residual functional capacity. As a result, this Court finds that Plaintiff fails to carry his burden of identifying any reversible error with respect to this condition.

Upon review, the undersigned finds no error in the ALJ's step two findings, and substantial evidence supports the ALJ's conclusion that Plaintiff's diabetes was non-severe. Indeed, the ALJ sufficiently considered the medical evidence pertaining to Plaintiff's diabetes, reasonably determined that it had no more than a minimal limitation on his ability to perform work-related activities, but appropriately accounted for it in the residual functional capacity. Accordingly, the undersigned finds no error warranting remand.

### D. The ALJ Sufficiently Accounted for Plaintiff's Physical and Mental Impairments and Substantial Evidence Supports Her Residual Functional Capacity Determination.

Plaintiff's final argument alleges the ALJ erred by not including the physical limitations imposed by Plaintiff's treating physicians[7] and the mental health limitations imposed by the mental

---

[7] The Court notes that the medical source statement created by Plaintiff's treating physician, Dr. Wilson, on January 23, 2019 (R. at 178), was not part of the administrative record at the time of the ALJ's December 11, 2019 decision, but was later submitted by Plaintiff's counsel to the SSA Appeals Council for consideration as additional evidence. (*See* R. at 2.) On February 24, 2021, the Appeals Council denied Plaintiff's request for review and declined to exhibit Dr. Wilson's medical source statement pursuant to 20 C.F.R. § 404.970(a)(5). (R. at 2; *see* § 20 C.F.R. 404.970(a)(5) (providing that the Appeals Council will review a case at a party's request if the Appeals Council

health providers. (Pl.'s Mem. at 33.) Plaintiff alleges that the ALJ's omission of these limitations is fatal to the outcome in his case, and that "the Administration has failed to establish that Plaintiff can maintain employment . . . ." (Pl.'s Mem. at 33.) However, Plaintiff provides scant legal support for this contention, fails to specify which limitations he contends were erroneously overlooked, and appears to argue that the ALJ was obligated to adopt the limitations assessed by his treatment providers simply because those limitations appear in the record. (Pl.'s Mem. at 33.) Defendant responds that "[o]verwhelming record evidence supports the ALJ's findings concerning Plaintiff's residual functional capacity[,]" which was determined in accordance with the regulations and inclusive of all Plaintiff's credibly established limitations. (Def.'s Mem. at 21-24.)

As explained above, the ALJ appropriately evaluated the medical opinion evidence and determined, as was her prerogative, that the assessed limitations contained therein were less persuasive based on the consistency and supportability factors articulated in the regulations. (R. at 44-45.) Thus, the ALJ had no duty to incorporate these assessed limitations in the residual functional capacity, which must reflect "only functional limitations and restrictions that result from [a claimant's] medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p, 1996 WL 374184, at *1. Here, the ALJ included all credibly established limitations in Plaintiff's residual functional capacity, which she determined

---

"receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probably that the additional evidence would change the outcome of the decision").) Specifically, the Appeals Council explained that Dr. Wilson's medical source statement did "not show a reasonable probability that it would change the outcome of the decision." (R. at 2.) Plaintiff does not challenge the Appeals Council's denial of this evidence, and his failure to raise an objection on this ground subsequently waives any claim involving it. *See Pleasant Valley Hosp. v. Shalala*, 32 F.3d 67, 70 (4th Cir. 1994) (finding that failure to raise issue before district court operates as waiver of appellate review). Therefore, the Court need not address the Appeals Council's decision to omit Dr. Wilson's medical source statement from the evidence of record.

after considering the medical evidence, opinions, and Plaintiff's subjective complaints. (*See* R. at 40-45.) Accordingly, the undersigned finds the ALJ did not err.

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 23), GRANTS Defendant's Motion for Summary Judgment (ECF No. 25), and AFFIRMS the final decision of the Commissioner. The case is now CLOSED.

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: March 7, 2023